Wilson's Case.

In the matter of the assessment of damages upon the bond given by Joseph C. Wilson, as guardian of his minor children.

38  205
54L 154

The penalty of a guardian's bond was $2,700. After judgment against him and his sureties thereon, and a reference to have the damages assessed, the guardian's expense of maintaining the wards was not allowed. The application was by one of the sureties. It does not appear that the guardian, who was the father of the wards, was not able to support them, and it does appear that he received and had the benefit of their wages meanwhile, and he never made any charge against them for support. The damages, however, cannot exceed the penalty of the bond.

On exceptions to report of surrogate, to whom it was referred to ascertain and report the amount of damages.

*Mr. John J. Harned* and *Mr. T. B. Harned,* for present guardian.

*Mr. R. M. Ware,* for sureties.

The Ordinary.

Joseph C. Wilson was appointed guardian of the persons and property of his children, Samuel E., Sarah C. (now Priest), Rachel E. and Eli, on the 3d of April, 1867. He filed an account of his guardianship in 1869, which was allowed, by which it appears that there was then a balance of $1,293.72 in his hands due to his wards in equal shares. In April, 1873, he filed another account (also duly passed), by which it appears that

---

Note.—Whether a surety is ever liable beyond the penalty of the bond, see *Brandt on Suretyship* ¿ 93 ; 2 Sutherland on Damages 14, 15 notes ; Graham v. Bickham, 2 Yeates 32, 4 Dallas 148, 1 Am. Dec. 328, 338 note ; also, Long v. Long, 1 C. E. Gr. 59 ; United States v. Meeker, 9 Phila. 470, Nixon, J. ; Gray v. Cook, 3 Houst. 49 ; Tyson v. Sanderson, 45 Ala. 364 ; Wyman v. Robinson, 73 Me. 384 ; Ansly v. Mock, 8 Ala. 444 ; Olmsted v. Olmsted, 38 Conn. 309 ; Beers v. Shannon, 73 N. Y. 292 ; Stitson v. City Bank, 12 Ohio St. 577, 590 ; Levy v. Taylor, 24 Md. 282.—Rep.

there was at that time due them from him a balance of $1,651.50. He was subsequently removed from his office and Frederick Shindle appointed in his place. Wilson's bond was forfeited, and suit was brought thereon and judgment recovered therein for $2,700, the amount of the penalty. On application to this court to assess the damages, an order was made referring it to the surrogate of Camden county to ascertain and report the damages. To his report both sides except. He reports that the damages should be assessed at $2,024. He reaches this result by charging the guardian with $2,700 for the principal and interest of the wards' estate in his hands, and allowing him $624 for the cost of the support and maintenance of the children as follows: For Sarah, $52 ($1 a week, from March, 1873, to March, 1874), and for each of the others the like sum per week, from March, 1873 to March, 1877. The guardian has never made any charge against the fund for the support of the children. He does not make any now. One of his sureties makes the claim for the allowance. The proof does not justify the allowance, nor any allowance, on account of the support and maintenance of the children or any of them. Witnesses testify, indeed, that the father was a poor man; yet it appears that in 1867 he bought a farm of about eighty acres of good land, for which he gave $1,000 in cash, and he sold it about two years afterwards for $1,250. He appears also to have been in the charcoal business. The children worked in a mill. Mrs. Priest testifies that she and all the other children went to work in the mill in 1874, and that she and her brother Samuel worked elsewhere previously to that time. She says the youngest child was only about eight or nine years old when he began to work, and that she herself began when she was about nine or ten. There is no proof that the father was so poor that he could not support his children. So long as they lived with him he had the benefit of their wages. There are no grounds on which the deduction made by the surrogate can be supported. The balance of the fund in the hands of the guardian, as shown by the account of 1873, is due, and interest thereon, from the time of passing

that account to the present. But they amount to more than the penalty of the bond. The damages should be assessed at $2,700, the amount of the penalty.